IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| TONY DEWYANE MOORE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:05-CV-1145-T |
| ) | |
| KATHY DUBOISE, et.al., ) | |
| ) | |
|     Defendant. ) | |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Nurse Cathy DuBose, incorrectly designated in the Complaint as Kathy Duboise, Jail Administrator Blake Jennings, and Sheriff Jimmy Abbett, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On December 12, 2005, Plaintiff Tony Dewayne Moore filed his Complaint in the United States District Court for the Middle District of Alabama. On December 16, 2005, this Court ordered Defendants to file a Special Report and Answer within forty days of the date of the order.

Plaintiff was arrested on November 10, 2005, on two charges of failure to appear in reference to convictions for driving with a revoked license and driving under the influence. (Exhibit A, Inmate File of Tony Dewyane Moore[1], "Inmate File," Alabama Uniform Arrest Report dated November 10, 2005; Exhibit B, Inmate File, Alias Warrant re TR 2001-1191; Exhibit C, Inmate File, Alias Warrant re TR 2001-1192; Exhibit D, Inmate File, Order dated August 8, 2005, and executed November 10, 2005; Exhibit E, Alabama SJIS TR Case Detail re TR 2001-1191; Exhibit F, Alabama SJIS TR Case Detail re TR 2001-1192.) Plaintiff was

---

[1] For authentication of the Inmate File of Tony Dewyane Moore, see Exhibit H, Affidavit of Blake Jennings, "Jennings aff.," ¶ 17.

booked in the Tallapoosa County Jail that same day. (Exhibit G, Inmate File, Tallapoosa County Jail In-Processing Check-in dated November 10, 2005, and Mug Shot.) The Plaintiff was released from the Tallapoosa County Jail on December 27, 2005. (Exhibit H, Affidavit of Blake Jennings, "Jennings aff.," ¶ 15; Exhibit I, Medical File of Tony Dewyane Moore[2], "Medical File," Progress Notes, Note dated December 27, 2005.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on December 1, 2005, he received delayed medical attention in that Dr. Schuster and Registered Nurse Cathy DuBose refused to take him to an outside doctor for a second opinion and that his "rectum are [sic] to [sic] sore be sticking his finger up my rectum." (Plaintiff's Complaint, p. 2.) Plaintiff further alleges that Dr. Schuster said that he could not do anything about his hernia and that an outside doctor said he needed surgery. (Plaintiff's Complaint, p. 3.) He finally alleges that Blake Jennings told him if he wrote another letter to the District Court in Montgomery he would lock him up in the holding cell and that he feels his life is in danger. (Plaintiff's Complaint, p. 3.) The Plaintiff requests monetary damages for mental duress, pain, and anguish in the sum of one million dollars. (Plaintiff's Complaint, p. 3.) The Plaintiff also requests injunctive relief in that he requests care for his medical needs. (Plaintiff's Complaint, p. 3.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Ex. H, Jennings aff., ¶ 4; Ex. J, DuBose aff., ¶ 3; Exhibit K, Affidavit of Sheriff Jimmy Abbett, "Abbett

---

[2] For authentication of the Medical File of Tony Dewyane Moore, see Exhibit J, Affidavit of Cathy DuBose, "DuBose aff.," ¶ 10.

2

aff.," ¶ 4.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**I.    FACTS**

Sheriff Jimmy Abbett has delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to the Jail Administrator Blake Jennings.  As Sheriff of Tallapoosa County, Jimmy Abbett is responsible for promulgating the policies governing the Jail.  (Ex. K, Abbett aff., ¶ 5.)

It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being.  (Ex. K, Abbett aff., ¶ 6; Ex. H, Jennings aff., ¶ 5.)  The Jail employs a Registered Nurse, Nurse Cathy DuBose, who is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays.  She is on call at all times of the day and night.  Robert Schuster, M.D., also comes to the Tallapoosa County Jail regularly to see inmates who are referred to him by Nurse DuBose.  (Ex. K, Abbett aff., ¶ 7; Ex. H, Jennings aff., ¶ 6.)

An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired.  The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained.  (Ex. K, Abbett aff., ¶ 8; Ex. H, Jennings aff., ¶ 7.)  Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate.  In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services

without delay. All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log. (Ex. K, Abbett aff., ¶ 9; Ex. H, Jennings aff., ¶ 8.)

Inmates are given prescription medication as prescribed. Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse. Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care. (Ex. K, Abbett aff., ¶ 10; Ex. H, Jennings aff., ¶ 9.)

On November 23, 2005, Nurse DuBose ordered Extra Strength Tylenol for the Plaintiff twice a day as needed. (Exhibit L, Medical File, Medications/Physicians Orders, Note dated November 23, 2005; Ex. J, DuBose aff., ¶ 4.) On November 29, 2005, Nurse DuBose took the Plaintiff's medical history. (Ex. I, Progress Notes, Note dated November 29, 2005; Ex. J, DuBose aff., ¶ 4.) Nurse DuBose noted that the Plaintiff stated that Codeine and Ibuprofen make him bleed. She also noted that the Plaintiff had had surgery for hemorrhoids in June 2005 and tooth extraction surgery in April 2005. Further, she noted that he had had warts removed from his genitalia in July 2005. Nurse DuBose also noted that the Plaintiff stated that he has a hernia. (Ex. I, Progress Notes, Note dated November 29, 2005; Ex. J, DuBose aff., ¶ 4.)

Two days later, the Plaintiff was seen by Dr. Schuster. (Ex. I, Progress Notes, Note dated December 1, 2005; Ex. J, DuBose aff., ¶ 5.) Dr. Schuster noted that the Plaintiff requested to see him about a foul odor from his anus and "piece of meat" when he wipes. There was no discharge or blood. The notes show that the Plaintiff has pain with bowel movements. Dr. Schuster noted that the Plaintiff had a history of hemorrhoids and was tender in his left groin. Dr. Schuster attempted to examine the Plaintiff's perianal area. However, the Plaintiff refused this exam. Nurse Dubose witnessed this incident. Dr. Schuster noted that he explained to the Plaintiff that

he could not tell what was wrong without examining him. Nurse DuBose also noted that the Plaintiff refused to let Dr. Schuster examine his rectum and would not even pull his pants down. (Ex. I, Progress Notes, Note dated December 1, 2005; Ex. J, DuBose aff., ¶ 5.) Dr. Schuster noted that the Plaintiff had hemorrhoids and a questionable problem in his perianal area. He prescribed Amoxil, Anusol, and Flagyl for the Plaintiff's hemorrhoids. (Ex. I, Progress Notes, Note dated December 1, 2005; Ex. L, Medications/Physicians Orders dated December 1, 2005; Ex. J, DuBose aff., ¶ 5.)

On December 16, 2005, Nurse DuBose saw the Plaintiff at his request. (Ex. I, Progress Notes, Note dated December 16, 2005; Ex. J, DuBose aff., ¶ 6.) The Plaintiff requested that she do another urine test which she did. The test results were normal. He then asked for pain medication. Nurse DuBose told the Plaintiff that she would give him two Tylenol twice a day. The Plaintiff then told Nurse DuBose that his private physician said that he needed surgery. Nurse DuBose informed the Plaintiff that he would have to be examined by Dr. Schuster in order to determine any need for referral to another physician. Nurse DuBose also reminded the Plaintiff that he had refused to let Dr. Schuster examine him. She then asked the Plaintiff if he would like to see Dr. Schuster again. He said yes. Therefore, Nurse DuBose placed him on the list to see Dr. Schuster. (Ex. I, Progress Notes, Note dated December 16, 2005; Ex. J, DuBose aff., ¶ 6.) Nurse DuBose also ordered two extra-strength Tylenol twice a day for the Plaintiff as needed. (Ex. L, Medications/Physician Orders, Note dated December 16, 2005; Ex. J, DuBose aff., ¶ 6.)

On December 19, 2005, Nurse DuBose obtained a medical release from the Plaintiff in order to get the medical records from Jackson hospital where the Plaintiff had been treated. (Exhibit M, Medical File, Authorization for Disclosure of Confidential Information, dated

December 19, 2005; Ex. J, DuBose aff., ¶ 7.)  Nurse DuBose then contacted Jackson Hospital to obtain the records.  (Exhibit N, Medical File, Facsimile Transmittal Sheet dated December 19, 2005; Ex. J, DuBose aff., ¶ 7.)  The records from Jackson Hospital showed that on June 22, 2005, the Plaintiff was seen at the Hospital for complaints of rectal bleeding.  (Exhibit O, Medical File, Records from Jackson Hospital dated June 22, 2005; Ex. J, DuBose aff., ¶ 7.)  He was diagnosed with hemorrhoids and was instructed to follow up with a surgeon in two days.  (Ex. O, Records from Jackson Hospital dated June 22, 2005; Ex. J, DuBose aff. ¶ 7.)

On December 23, 2005, Dr. Schuster reexamined the Plaintiff.  (Ex. I, Progress Notes, Notes dated December 23, 2005; Ex. J, DuBose aff., ¶ 8.)  Dr. Schuster noted that the Plaintiff had persistent perianal pain and foul smelling discharge.  He also noted that the medication that he had prescribed did not remedy the problem.  After Dr. Schuster examined the Plaintiff, he determined that the Plaintiff had an indirect inguinal hernia and an anal fissure and therefore should be referred to Dr. Scott Cassidy, a surgeon in Alexander City, Alabama.  (Ex. I, Progress Notes, Notes dated December 23, 2005; Ex. L, Medications/Physician Orders, Order dated December 23, 2005; Ex. J, DuBose aff., ¶ 8.)  Therefore, Nurse DuBose attempted to make an appointment with Dr. Cassidy that same day.  (Ex. I, Progress Notes, Notes dated December 23, 2005; Ex. J, DuBose aff., ¶ 8.)  However, Dr. Cassidy's office was closed.  (Ex. I, Progress Notes, Notes dated December 23, 2005; Ex. J, DuBose aff., ¶ 8.)  Nurse DuBose spoke with Dr. Cassidy's office on December 27, 2005, and attempted to set the Plaintiff up with an appointment.  (Ex. I, Progress Notes, Notes dated December 27, 2005; Ex. J, DuBose aff., ¶ 8.)  However, Nurse DuBose was informed that Dr. Cassidy refused to see the Plaintiff.  (Ex. I, Progress Notes, Notes dated December 27, 2005; Ex. J, DuBose aff., ¶ 8.)  The Plaintiff was

released from the Tallapoosa County Jail that day. (Ex. I, Progress Notes, Notes dated December 27, 2005; Ex. J, DuBose aff., ¶ 8.)

The Plaintiff's allegation that Jail Administrator Jennings told him that he would lock him up in the holding cell if he wrote another letter to the United States District Court in Montgomery, Alabama, is completely fabricated. Jail Administrator Jennings never said anything like that to the Plaintiff or any other inmate. (Ex. H, Jennings aff., ¶ 10.) Further, the Plaintiff has never complained to Jail Administrator Jennings that he felt his life was in danger at the jail. (Ex. H, Jennings aff., ¶ 11.)

Inmates are permitted regular visits with their attorneys. The Tallapoosa County Jail has a law library that is available for use by inmates upon their request. Inmates are also given access to mail. (Ex. H, Jennings aff., ¶ 16.)

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. A copy of any grievance form which is filed by an inmate will be placed in the inmate's Inmate File. (Ex. K, Abbett aff., ¶ 13; Ex. H, Jennings aff., ¶ 12.) However, there are no grievances in the Plaintiff's inmate file.[3] (Ex. H, Jennings aff., ¶ 13.)

The Defendants have complied with all policies and procedures of the Tallapoosa County Jail. The Defendants are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Ex. K, Abbett aff., ¶ 11; Ex. H, Jennings aff., ¶ 14; Ex. J, DuBose aff., ¶ 9.)

---

[3] The Plaintiff's Inmate File is attached to this Special Report as Exhibits A-D and G.

7

**II.    LAW**

    **A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.  Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.  Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail. Second, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the availability of a grievance procedure at the Tallapoosa County Jail, Plaintiff did not file a grievance with the Tallapoosa County Jail.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Tallapoosa County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> **2.     Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). In the Plaintiff's Complaint, he requests monetary damages for "mental duress, pain and anguish" but does not make a claim for damages for physical injury. Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.     Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Tallapoosa County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly

established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government

11

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### 1. Medical Claim

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that, on the date that the Plaintiff claims his

12

constitutional rights were violated, the Plaintiff was seen by a licensed and trained physician. However, the Plaintiff refused to allow the physician to examine him. Later that month, the Plaintiff requested to see Nurse DuBose. Nurse DuBose saw the Plaintiff and offered to arrange another appointment for Dr. Schuster to examine him. The Plaintiff agreed. Therefore, Nurse DuBose set up an appointment for the Plaintiff to see Dr. Schuster. After Dr. Schuster examined the Plaintiff, he ordered Nurse DuBose to arrange an appointment for the Plaintiff to see a surgeon. The evidence clearly shows that Nurse DuBose attempted to set up an appointment for the Plaintiff. The surgeon whom Dr. Schuster had recommended refused to see the Plaintiff. That same day the Plaintiff was released from the Tallapoosa County Jail.

Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff. During his incarceration at the Tallapoosa County Jail – a less than two month time period – the Plaintiff was seen by Nurse DuBose at least three times and by Dr. Schuster twice. Nurse DuBose was in the process of setting the Plaintiff up with an appointment with a surgeon at the time the Plaintiff was released.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant"

13

medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, Sheriff Abbett and Jail Administrator Jennings do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[4] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and a

---

[4] The medical director was a trained and licensed nurse. 302 F.3d at 846.

14

medical doctor for all his medical problems. Sheriff Abbett and Jail Administrator Jennings, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Furthermore, Nurse DuBose, like the director in Meloy, cannot, and should not, second guess the judgment of the medical doctor. Therefore, Defendants are entitled to qualified immunity from Plaintiff's medical claims.

### 2. Access to Courts Claim

> "[T]he fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." While Bounds guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (internal citations omitted). In Lewis v. Casey, the United States Supreme Court made it clear that, in order to prevail on a claim that an inmate's right to access to courts has been violated, the inmate must establish prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance program [or other alternative provided] hindered his efforts to pursue a legal claim." Lewis v. Casey, 116 S. Ct. 2174 (1996). To establish such prejudice, an inmate must "show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known, or that he suffered arguably, actionable harm that he wished to bring before the courts, but was so stymied by inadequacy of the law library that he was unable to even file a Complaint." Id.

The Plaintiff has failed to demonstrate that he was, in any way, prejudiced, in any manner whatsoever, in any court where he has had criminal or civil matters pending. For his criminal charges, he has access to an attorney. For the instant civil matter, it is obvious that Plaintiff was able to file his Complaint with this Court. Furthermore, the evidence is clear that inmates are permitted regular visits with their attorneys. The Tallapoosa County Jail has a law library that is available for use by inmates upon their request. Inmates are also given access to mail. Finally, Jail Administrator Jennings has never threatened the Plaintiff in any way to deter him from contacting the courts. Assuming, *arguendo*, that such a threat was made, it obviously had no impact on the Plaintiff as he was able to file this lawsuit. Accordingly, the Plaintiff has not alleged any facts sufficient to maintain a claim that he suffered a constitutional deprivation due to any alleged denial of access to courts based on any alleged deficiencies at the Tallapoosa County Jail and the evidence is clear that his rights were not, in fact, violated.

Because the Plaintiff cannot show a constitutional violation or that clearly established law provided the Defendants with fair warning that their conduct was unlawful, the Defendants are entitled to qualified immunity.

**D.     Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

    **1.** **All Plaintiff's claims against Sheriff Abbett must fail because he had no personal involvement in the alleged constitutional violation.**

  The Plaintiff has failed to allege that Sheriff Abbett was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that Sheriff Abbett personally participated in these claims, nor does the Plaintiff allege specifically how Sheriff Abbett violated his constitutional rights in regard to these claims. As such, all Plaintiff's claims are due to be dismissed against Sheriff Abbett.

    **2.** **Plaintiff's medical claims against Jail Administrator Jennings must fail because he had no personal involvement in the alleged constitutional violation.**

  The Plaintiff has failed to allege that Jail Administrator Jennings was in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm with regard to medical care. There are absolutely no facts to show that this Defendant personally participated in these claims, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights in regard to the medical claims. As such, Plaintiff's medical claims are due to be dismissed against Jail Administrator Jennings.

    **3.** **Plaintiff's claims against Nurse DuBose must fail because she had no personal involvement in the alleged constitutional violation.**

  The Plaintiff has failed to allege that Nurse DuBose was in any way personally involved in Plaintiff's access to courts claim or claim regarding his allegation that he was threatened. Plaintiff has offered no allegation demonstrating that Nurse DuBose was in any way involved in the

17

actions he claims were constitutionally infirm with regard to these claims. There are absolutely no facts in the Complaint to show that Nurse DuBose violated Plaintiff's constitutional rights in regard to these claims. Furthermore, as Jail Nurse, Nurse DuBose had no duty in regard to these claims. As such, Plaintiff's access to courts claim and his claim regarding his allegation that he was threatened are due to be dismissed against Nurse DuBose.

The Plaintiff has also failed to allege that Nurse DuBose was in any way personally involved in Plaintiff's medical claims. Plaintiff has offered no allegation demonstrating that Nurse DuBose was in any way involved in the actions he claims were constitutionally infirm with regard to these claims. There are absolutely no facts in the Complaint to show that Nurse DuBose violated Plaintiff's constitutional rights in regard to these claims. As such, Plaintiff's medical claim is due to be dismissed against Nurse DuBose.

    **4.    Any claims against Sheriff Abbett and Jail Administrator Jennings that are based on the theory of *respondeat superior* must fail.**

To the extent that Plaintiff's claims are an attempt to hold Sheriff Abbett and Jail Administrator Jennings liable under a *respondeat superior* theory, his claims must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

    **E.    Plaintiff's claims for injunctive relief are moot.**

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706

(11th Cir. 1998). In the instant case, the Plaintiff cannot overcome this initial hurdle with regard to his claim for injunctive relief because the Plaintiff's claims for injunctive relief are moot. "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Tallapoosa County Jail, claims for injunctive relief are moot. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). Therefore, to the extent that the Plaintiff's Complaint seeks injunctive relief, it fails for lack of subject matter jurisdiction.

### F.     Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[5] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268

---

[5] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Tony Dewyane Moore, in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 25th day of January, 2006.

> s/Amanda Kay Morgan
> GARY L. WILLFORD, JR. Bar Number: WIL198
> AMANDA KAY MORGAN Bar No. ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama 36124
> Telephone: (334) 262-1850
> Fax: (334) 262-1889
> E-mail: amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of January, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Tony Dewyane Moore
> Tallapoosa County Jail
> 316 Industrial Park Drive
> Dadeville, AL 36853

> s/Amanda Kay Morgan
> OF COUNSEL